## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ALASKA

In re:

LYNN H. LYTHGOE, JR.,

          Debtor.

Case No. A07-00658-DMD

Chapter 11

Filed On
8/12/08

## MEMORANDUM REGARDING PRIMING LIEN

        The debtor, Lynn Lythgoe, has filed a motion for a priming loan. The funds would be used to complete a construction project located in Anchorage, Alaska. The proposed loan would prime the lien of First National Bank of Alaska in the property. The bank opposes the motion, as does creditor Kenneth Duffus. Creditors Bittner Plumbing and Heating, Inc., and Spenard Builders Supply, Inc., support the motion. Creditor HD Supply Waterworks, Ltd., has filed a non-opposition to the motion. I have reviewed the pleadings and considered the argument of counsel and testimony produced at the hearing on this matter. For the reasons stated below, I have concluded that the motion should be denied.

Background

        Lynn Lythgoe is an Anchorage landlord and developer. He has financed a number of projects for residential income properties through First National Bank of Anchorage (FNBA"). Lythgoe approached FNBA about financing the construction of seven eight-plex apartment buildings in March of 2005. FNBA agreed to finance the construction with a loan of $3.45 million. The project was scheduled for completion in the summer of

2006. Lythgoe had a commitment from a long-term lender to pay FNBA's construction loan upon completion of the project.

Lythgoe moved slowly with the project. FNBA's construction loan matured in September 2006. Only $733,110.00 of the loan had been disbursed at that time. The bank agreed to extend the loan term by nine months. When the loan extension expired in June of 2007, FNBA had disbursed roughly $2.6 million to Lythgoe but the project remained incomplete. Lythgoe informed the bank that he needed about $2.1 million in additional funding to complete it. FNBA agreed to finance the costs needed for completion if Lithgow could raise $400,000.00. These additional funds were needed to pay off FNBA's construction loan because costs of the project would exceed the amount of the take-out commitment. Lythgoe was unable to raise the funds. After FNBA scheduled a foreclosure sale, he filed for chapter 11 relief on December 17, 2007.

The project sat dormant over the Alaskan winter. Six months after Lythgoe filed his petition, on June 16, 2008, he filed a motion for a priming lien of $1.5 million. In support of his motion, Lythgoe submitted eight pages from an appraisal performed on the subject property by Cushman and Wakefield.[1] Attached to the motion as Exhibit "B" were eight pages from a 109 page appraisal performed by Cushman and Wakefield on the subject property. The appraisal was prepared August 6, 2007, for Countrywide Commercial Real Estate Finance, Inc., and was intended for its use only. The appraisal placed an "as-is" value

---

[1] *See* Ex. B to Debtor's Mot. to Approve Priming Loan, filed June 16, 2008 (Docket No. 128).

2

of $4.5 million on the property, as of July 24, 2007. The appraisal also gave the property two prospective values. Assuming a completion date of October 1, 2007, it valued the project at $5.85 million. A higher value of $6 million was projected as of August 1, 2008, assuming that the project had been completed and rents had "stabilized" by that date. There is no indication, in the eight pages annexed to the motion, that the appraisers had considered the loss of secondary capital markets for multi-family loans in reaching their conclusions.

Analysis

11 U.S.C. § 364(d) provides:

> (d)(1)  The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if –
> 
> (A)  the trustee is unable to obtain such credit otherwise; and
> 
> (B)  there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
> 
> (2)  In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.[2]

---

[2] 11 U.S.C. § 364(d) (Thomson West 2008).

3

Here, the debtor has the burden of establishing that FNBA's senior lien will be adequately protected if the priming lien is permitted. "Secured creditors should not be deprived of the benefit of their bargain."[3]

> The purpose of "adequate protection" for a creditor "is to insure that the creditor receives the value for which he bargained prebankruptcy." "The goal of adequate protection is to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization." "In other words, the proposal should provide the prepetition secured creditor with the same level of protection it would have had if there had not been post-petition superpriority financing.
>
> . . . .
>
> [T]he "important question" in determining the adequacy of protection under section 364(d)(1)(B) is whether the interest of the secured creditor whose lien is to be primed "is being unjustifiably jeopardized."
>
> The determination of adequate protection is a fact-specific inquiry. "It's application is left to the vagaries of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process."  "Given the fact that super priority financing displaces liens on which creditors have relied in extending credit, a court that is asked to authorize such financing must be

---

[3] *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D. N.Y. 1996), *citing In re Dunes Casino Hotel*, 69 B.R. 784, 793-94 (Bankr. D.N.J. 1992), *which quotes* H.R. Rep. No. 595 at 339, 1978, U.S. Code Cong. & Ad. News at 5787, 6295.

4

> particularly cautious when assessing whether the creditors so displaced are adequately protected."[4]

Lythgoe has failed to meet his burden of proof in this case. He did not introduce the Cushman and Wakefield appraisal into evidence at the hearing, nor was expert testimony provided from the men who prepared the report, Richard L. Clark and Steven A. Zenker. No competent evidence was submitted to establish the value of the real property or show that FNBA's senior lien would be adequately protected.

The debtor asks the court to rely on eight pages from the appraisal to evaluate adequate protection. These eight pages were not introduced into evidence at the hearing. But even if they had been, a number of problems remain. First, these pages were taken from an appraisal that is over one year old. Huge shake-ups in the real estate market have occurred both during and after the date of the report. The sub-prime crisis continues to grab headlines throughout the world. As noted by the debtor's banking expert, Hal Ward, the sub-prime financial crisis has spread to the secondary financing market for multi-family housing. Currently, there are no ready markets for long-term financing of the debtor's project.[5] There is nothing within the eight pages to indicate that their authors considered the effects of the current real estate crisis in their valuation of the subject property. The appraisal should have been updated to reflect the current developments in the overall real estate market.

---

[4] *Mosello*, 195 B.R. at 288-289 (citations omitted).

[5] While Alaska Housing Finance Corporation does have a program for multi-family long term financing, it is not available to individuals who have filed bankruptcy within five years of the application.

There is an additional problem with the eight pages Lythgoe appended to his motion. Four of those eight pages consist of a letter which contains the conclusions of the appraisers. However, this letter is part of the larger appraisal report. The letter specifies that it "is invalid as an opinion of value if detached from the report, which contains the text, exhibits and Addenda."[6] Lythgoe did not produce the balance of the report at the hearing. Further, even if he had, the valuation conclusions in the appraisal were based upon the assumptions that the project would be complete by October 1, 2007, and would reach a level of stabilized occupancy by August 1, 2008. Neither assumption has been satisfied. The project is incomplete and unoccupied. The report states, "We reserve the right to amend our value if the improvements are completed in such a was (*sic*) as to differ from what is described herein."[7] No amended values, reflecting the current state of the project, have been submitted.

Assuming the debtor were to somehow overcome the hurdles posed by the lack of current appraisal data, I have no confidence that the proposed priming lien would result in timely completion of the project. The first and most obvious problem is that the debtor has not demonstrated any management expertise in the construction of this project. From the onset, he has had a history of consistent delays and major cost overruns. The project was originally scheduled for completion in the summer of 2006, with a construction loan of $3.45 million. The debtor is now projecting a June 30, 2009, completion date. Costs to complete

---

[6] *See* Ex. B, p. 4, attached to Debtor's Mot. to Approve Priming Loan.

[7] *See* Ex. B, p. 7, attached to Debtor's Mot. to Approve Priming Loan. .

6

the project include $2.93 million owed FNBA, $740,000.00 in unpaid mechanic's liens, an additional $1.5 million for the proposed priming lien, plus accruing interest and taxes on the property, for a total of about $5.72 million. Why should the debtor's history of cost overruns and delays suddenly end now? There is no reason to believe that the debtor, within this chapter 11, has miraculously acquired the expertise to finish this project on time and within budget. At best, his completion of the project is a highly speculative enterprise.

Finally, even if the court were to assume that the debtor could complete the project in a timely and cost-efficient manner, there is no assurance that Lythgoe would be able to obtain end financing at the close of the priming lien's three year term. The debtor's banking expert, Hal Ward, admitted during direct examination that his three-year estimate for the return of secondary financial markets for multi-family construction projects was a "wild guess." Wild guesses do not constitute an evidentiary basis for determining adequate protection of a priming lien.

Conclusion

In seeking a priming lien, § 364(d)(2) requires a debtor in possession to show that existing liens on the property will be adequately protected. Lythgoe has failed to satisfy this burden. No expert testimony or current appraisals have been provided to establish the value of the property in today's market. The debtor's prebankruptcy history on this project does not indicate he is capable of completing it on time and within the terms of the priming loan budget. No evidence was offered to show that his managerial skills on this project have

7

improved since filing bankruptcy.  Nor has adequate evidence been offered to show that the debtor will be able to perform under the terms of the priming loan with Mr. Aalfs.

Based on the limited evidence which has been provided, I cannot conclude that FNBA's interest in the realty would be adequately protected.  The debtor's motion for a priming lien will be denied.  An order and judgment will be entered consistent with this memorandum.

DATED: August 12, 2008

BY THE COURT

 /s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:  J. Siemers, Esq.
　　　　J. Beard, Esq.
　　　　D. Bundy, Esq.
　　　　W. Choquette, Esq.
　　　　G. Oczkus, Esq.
　　　　K. Duffus, 20441 Ptarmigan Blvd., Eagle River, AK  99577
　　　　K. Hill, Esq.
　　　　U. S. Trustee
　　　　　　　8/12/08