# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

LYNN H. LYTHGOE, JR.,

        Debtor.

Case No. A07-00658-DMD
Chapter 11

**Filed On
10/22/08**

## <u>MEMORANDUM ON RECONSIDERATION</u>

On August 12, 2008 this court entered an order and judgment denying the debtor's motion for a $1.5 million priming lien. The debtor has moved for reconsideration of that order. A hearing on the motion was held on October 14 and 15. I will grant the motion and allow the priming lien.

The debtor based his motion for a priming lien on a Cushman and Wakefield appraisal. I found that the eight page summary of the Cushman and Wakefield appraisal was not admitted into evidence and was inadequate to show adequate protection to First National within the meaning of 11 U.S.C. § 364(d). With his motion for reconsideration, which was timely, the debtor furnished the 111 page balance of the appraisal and advised the court that an updated appraisal would be furnished within three weeks of August 22, 2008. Cushman and Wakefield refused to complete the update or testify on the debtor's behalf, however. The debtor then employed Rick Richter to perform an appraisal. Richter's appraisal was filed with the court on October 13, 2008. Both of the appraisals were admitted into evidence at the hearing.

Richter's conclusions were somewhat different than Cushman and Wakefield's. Under Richter's appraisal, the as is value of the Strawberry Meadows project was $3.27 million versus $4.5 million by Cushman and Wakefield. Richter found the value at completion to be $5.31 million. Cushman and Wakefield had a value of $5.85 million at completion. With the project fully leased, Richter came in at $5.65 million versus $6 million for Cushman and Wakefield.

The debtor also offered the testimony of Troy Stafford, a multi-family and commercial loan broker. Mr. Stafford indicated that there was a market for long term loans on multi-family projects for 75 to 80 percent of fair market value. Mr. Stafford indicated that this project could obtain financing in such a market if properly completed and leased up.

With this new evidence, I am convinced that the position of First National Bank will be adequately protected by the proposed priming lien. As I noted in my first memorandum, the purpose of adequate protection is to insure that the secured creditor receives the benefit of its bargain. The interests of the secured creditor must not be unjustifiably jeopardized. A court must be particularly cautious when displacing a creditor's lien.[1] According to the Cushman and Wakefield appraisal, the debtor has an equity of $1.5 million now. First National has a lien of $3 million and the property is valued at $4.5 million. That equity would remain constant through the construction process. With the project fully leased, First National would still be protected by an equity cushion of $1.5 million even though it would be in a second position. Under the Richter appraisal, the debtor has a present equity of about $270,000. This equity would increase during the construction

---

[1] *In re Mosello*, 195 B.R. 277, 288-289 (Bankr. S.D.N.Y. 1996).

process.  At completion with the project fully leased up, First National will have an equity cushion of about $1 million.  Under either appraisal, First National is adequately protected.

First National argues that the proceeds of an 80% loan would be insufficient to pay the existing secured debt and the priming lien loan, which would total more than $5.6 million under their calculations.  That projection may be true.  The plan will have to deal with those creditors who are not paid in full through refinance.  Depending upon the priority of their lien status, some of the liens may be unsecured claims under 11 U.S.C. § 506(b).  The plan will have to have a mechanism to deal with such claims but that is no reason to deny the priming lien.  Even if all mechanics liens may not be paid in full, they will be treated much better overall through completion of the project.  In a First National foreclosure they will receive nothing.

In my initial memorandum I was concerned with the debtor's ability to complete this project on time and on budget.  I was unaware of the family tragedy that had befallen the debtor and his son.  First National alleged that while it has great sympathy for Mr. Lythgoe, there were problems with the project before the injury.  That may well be the case.  But, having heard Mr. Lythgoe's testimony for a second occasion, I am convinced that he is extremely motivated to bring this project to fruition in a timely manner within his budget.  His entire financial life hangs in the balance.  His track record on past apartment projects has been good.  He deserves a chance to complete the project.

First National is concerned about payment of construction interest to it during the construction phase of the project.  Because First National is adequately protected, the debtor does not have to pay construction interest to it during the construction phase.  The

issue of interest to mechanic's lien creditors will be dealt with in the plan.  Also, the debtor does not have to pay interest on the lien claims prior to confirmation absent an order for adequate protection.

First National is concerned about the costs of the priming loan.  The costs are substantial.  But there are no other lenders willing to assist this debtor in his current predicament.  Something must be accomplished to get this project off the ground.

First National raises issues with the costs of completion.  As noted earlier, no interest is payable to First National as adequate protection at this time.  Nor is there interest payable to mechanic's lien claimants.  Priming loan interest can be deferred and paid with accruing rents as units are complete.  The debtor has sufficient "wiggle" room in his costs of completion to complete the project as well as to pay property taxes as rents accrue.  The debtor has the ability to complete the project with the priming loan.

I do want a written protocol on the disbursement of loan proceeds which I will adopt as an order.  I want to insure that all payments are proper and correct and that they are not payments for pre-petition indebtedness.  The debtor shall consult with Mr. Aalfs, the United States Trustee  and First National to promptly  prepare such a  protocol.  The court will hold a formal hearing to adopt the protocol.  No disbursements are to be made under the loan until the protocol  has been formally adopted by the court.

DATED: October 22, 2008.


BY THE COURT


/s/ Donald MacDonald IV
DONALD MacDONALD IV
United States Bankruptcy Judge

Serve:       J. Siemers, Esq.
             J. Beard, Esq.
             K. Hill, Esq.


10/22/08