UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

In re:

LYNN H. LYTHGOE, JR.,

        Debtor.

Case No. A07-00658-DMD
Chapter 11

**Filed On
3/19/09**

## MEMORANDUM ON K&W CLAIM

K&W Interiors, Inc. ("K&W"), has submitted an unsecured proof of claim in the sum of $41,164.80. The debtor has objected to this claim as constituting a corporate obligation of L. H. Construction, Inc., for which he has no personal liability. I find in favor of the debtor.

Background

In April of 2000, L. H. Construction, Inc. ("L.H."), wrote a letter to K&W and other creditors with a proposal for satisfying its outstanding accounts.[1] The letter was typed on L.H. letterhead. L. H. requested a 20% discount on K&W's account and proposed paying the discounted amount as follows: a) 20% was to be paid in cash through funds loaned by Northrim Bank; b) 45% was to be secured by real property in Pleasant Valley Subdivision owned by Lythgoe, and was to be paid within one year; and c) 35% was to be paid through an unsecured loan amortized over five years. The offer was signed by Lythgoe as vice president of L.H.

---

[1] *See* Ex. A to K&W's Resp. to Obj. to Claim No. 38, filed Dec. 15, 2008 (Docket No. 312).

K&W typed its response on the bottom of the letter. K&W would agree to the proposal under the following conditions:

1. Item c - the 35% balance will be secured with a personal note and will be increased to include the initial 20% discount, for a total of $26,439.70

2. Contingent on L.H. Construction staying in business and purchasing <u>all</u> flooring and cabinets from K & W for their current and future starts.[2]

Lythgoe did not sign the revised letter.

Settlement documents were subsequently prepared in accordance with L.H.'s offer. Lythgoe and his wife executed a deed of trust covering a lot in Pleasant Valley Subdivision.[3] The deed of trust secured a note in favor of K&W in the sum of $19,829.78.[4] This note was for the 45% portion of K&W's claim. K&W also received an unsecured note, for the increased sum it had requested, $26,439.70.[5] Both the deed of trust note and the unsecured note indicated that the "undersigned maker" was "personally obligated and fully liable for the amount due under this Note." Both notes also stated that the payee of the note could sue on the note and recover a "personal judgment" against the maker. Both notes contained a typed signature block as follows:

> L.H. CONSTRUCTION, INC.
> By:_____
> Its.:_____

---

[2]*Id.*

[3]*See* Ex. 7 to Debtor's Resp. to K&W on Claims Obj., filed Feb. 17, 2009 (Docket No. 336).

[4]*See* Ex. D to K&W's Resp. to Obj. to Claim No. 38, filed Dec. 15, 2008 (Docket No. 312).

[5]*See* Ex. E to K&W's Resp. to Obj. to Claim No. 38, filed Dec. 15, 2008 (Docket No. 312).

2

Both were signed by Lynn Lythgoe as vice president of L.H.

Joint escrow instructions were also prepared.[6] The instructions referred to Lythgoe and his wife as trustors. According to the instructions, the escrow included an "Unsecured Promissory Note executed by Trustor in favor of Beneficiary in the sum of $26,439.70," and a "Deed of Trust Note executed by Trustor in favor of Beneficiary in the sum of $19,829.78." The instructions also referenced the deed of trust and other documents. These instructions were signed by Lythgoe as "Owner/Trustor" and Kaercher as "Supplier/Beneficiary."

K&W received the 20% cash payment from Northrim and the 45% payment which had been collateralized by Lythgoe's realty. No payments were made on the unsecured note, however. Lythgoe filed a chapter 11 petition on December 17, 2007. K&W filed Proof of Claim No. 38, in the sum of $41,164.80. This amount reflects the principal and accrued interest on the $26,439.70 unsecured promissory note. Lythgoe has objected to K&W's claim on the ground that it is a corporate debt of L.H.'s which he did not personally guarantee.

Discussion

K&W says that its request for a "personal note" sought a personal guarantee from Lythgoe. A promise to answer for the debt of another "is unenforceable unless it or some note or memorandum of it is in writing and subscribed by the party charged."[7] Here,

---

[6] *See* Ex. C to K&W's Resp. to Obj. to Claim No. 38, filed Dec. 15, 2008 (Docket No. 312).

[7] AS 09.25.010(a)(3).

3

there is no such note or memorandum. To avoid this fundamental problem, K&W relies on the Alaska Supreme Court's decision in *Beck v. Haines Terminal and Highway Company, Inc.*[8] In that case, Laurence F. Beck, the general manager of Chilkoot Lumber Company, signed a lengthy and explicit "Joint Personal Guaranty."[9] Under the terms of the document, Beck guaranteed the obligations of the Chilkoot Lumber Company to White Pass, a local fuel distributor. The text of the agreement provided:

> WE Laurence F. Beck AND _____ RESIDING AT Haines, Alaska, FOR AND IN CONSIDERATION OF YOUR EXTENDING AT OUR REQUEST CREDIT TO Chilkoot Lbr., Co., Inc. (HEREINAFTER REFERRED TO AS "THE COMPANY"), HEREBY PERSONALLY GUARANTEE TO WHITE PASS THE PAYMENT AT SKAGWAY, ALASKA OF ANY OBLIGATION OF THE COMPANY AND WE HEREBY AGREE TO BIND OURSELVES TO PAY WHITE PASS ON DEMAND ANY SUM WHICH MAY BECOME DUE TO WHITE PASS BY THE COMPANY WHENEVER THE COMPANY SHALL FAIL TO PAY THE SAME. IT IS UNDERSTOOD THA [sic] THIS GUARANTEE SHALL BE CONTINUING AND IRREVOCABLE. WE DO HEREBY WAIVE NOTICE OF DEFAULT NON PAYMENT AND NOTICE THEREOF AND CONSENT TO ANY MODIFICATION OR RENEWAL OF THE CREDIT AGREEMENT HEREBY GUARANTEED.
>
> SIGNATURE L.F. Beck[10]

Beck signed the form, adding "General Manager" after his signature.

---

[8] 843 P.2d 1229 (Alaska 1992).

[9] *Id.* at 1230.

[10] *Id.* n.1.

Chilkoot defaulted on its payments to White Pass. White Pass filed a collection action against both Chilkoot and Beck, as guarantor. Beck argued that the guarantee wasn't enforceable because the designation of "general manager" appeared after his signature, making the guarantee ambiguous. The Alaska Supreme Court disagreed. It noted that, "[u]nder normal circumstances, a written collateral undertaking given to secure a corporate debt will be rendered meaningless if the primary debtor is found to be the sole party liable thereunder."[11] The court found that the guaranty to White Pass would be illusory, unless Beck was found to be individually liable, and held that "the designation 'General Manager' after Beck's signature was merely descriptive language."[12] The court also found that Beck's subjective intent in signing the guaranty was irrelevant.[13]

    The guaranty in *Beck* contrasts sharply with the promissory note in the case at bar. First, nowhere in the K&W note does the language "personal guarantee" appear. The guaranty in *Beck* was titled a "joint personal guaranty." Further, the obligor in the K&W note is "the undersigned" and the typewritten signature block at the end of the note is for "L.H. Construction." Lythgoe's name is not included in any of the note's typed provisions. The guaranty in *Beck* named Beck individually, and the typed signature block was for "L.F. Beck." Additionally, the guaranty expressly stated, in clear and unequivocal language, that Beck would personally guarantee any debt that accrued. The K&W note contains no such provisions. It does state, "The undersigned maker is personally obligated and fully liable for

---

[11] *Beck*, 843 P.2d at 1231, *citing Dann v. Team Bank*, 788 S.W.2d 182, 184 (Tex.App. 1990).

[12] *Beck,* 843 P.2d at 1231.

[13] *Id.*

5

the amount due under this Note."[14] But the undersigned maker was L.H. Construction, Inc., not Lythgoe. The note also states, "The payees of this Note have the right to sue on this Note and obtain a personal judgment against the maker for satisfaction of the amount due under this Note."[15] Again, however, the maker of the note was L.H. The only similarity between *Beck* and the K&W note is that both individuals, Beck and Lythgoe, wrote their corporate capacities after their signatures on the documents. But this fact, by itself, is insufficient to bind Lythgoe personally where the note itself cannot be construed as a personal guarantee. The case at bar is clearly distinguishable from *Beck.* Lythgoe is not personally liable on the K&W note.

For the foregoing reasons, Lythgoe's objection to K&W's claim will be sustained. An order and judgment will be entered consistent with this memorandum.

DATED: March 19, 2009.

                                            BY THE COURT

                                            /s/ Donald MacDonald IV
                                            DONALD MacDONALD IV
                                            United States Bankruptcy Judge

Serve:      J. Siemers, Esq.
              M. Boutin, Esq.
              K. Hill, Esq.

              03/19/09

---

[14] *See* Ex. E to K&W's Resp. to Obj. to Claim No. 38, filed Dec. 15, 2008 (Docket No. 312).

[15] *Id.*

6