JUDGE HERB ROSS (Recalled)

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA
605 West 4th Avenue, Room 138, Anchorage, AK 99501-2253 — (Website: www.akb.uscourts.gov)
Clerk's Office:  907-271-2655 (1-800-859-8059 In-State) — Judge's Fax:  907-271-2692

**Filed On 7/6/09**

In re

LYNN H. LYTHGOE, JR.,

         Debtor(s)

Case No. A07-00658-HAR
In Chapter 11

MEMORANDUM REGARDING DETERMINATION THAT BP&K'S INTEREST IN TRUST FUND PRIMES THE INTEREST OF K&W INTERIORS

<u>SUMMARY</u>-  In **December 2007**, nondebtor LH Construction, Inc., (LHC) paid a retainer for attorney fees and costs in trust to Burr, Pease & Kurtz (BP&K) for the debtor Lythgoe's impending chapter 11.

In **March 2009**, K&W Interiors, Inc., executed on BP&K's trust account for its judgment against LHC.  BP&K refused to honor the execution, although some of LHC's retainer remained in the trust account.

Then, BP&K moved for an interim allowance of fees, but currently only seeks to pay itself from its trust account balance.  Claiming priority, K&W objects to BP&K paying the balance of LHC's retainer to itself.  Whose interest in the remaining LHC retainer is superior?

On receipt, BP&K acquired a possessory security interest in the LHC retainer (or, alternatively, outright ownership of the funds, depending on the type of retainer agreement). BP&K's security interest primed K&W's subsequent execution claim, especially since the funds had been fully earned by BP&K by then.

MEMORANDUM REGARDING DETERMINATION
THAT BP&K'S INTEREST IN TRUST FUND
PRIMES THE INTEREST OF K&W INTERIORS

**DISCUSSION**-

**Facts and Procedural Background**- For expedience, I'll adopt the factual background alleged by K&W Interiors, Inc., in its limited opposition to the interim fee application of BP&K, but the essential facts are much terser than that.[1]

In **December 2007**, LHC paid part of a $50,000 retainer (a $27,240.16 portion per K&W) to BP&K for the (mostly) future attorney fees and costs of Lynn Lythgoe's individual chapter 11 case. The balance of the $50,000 was paid by another of the debtor's closely held corporations. The funds were placed in BP&K's trust account. BP&K's retention as debtor's attorney was approved shortly after the case was filed.[2]

On **March 25, 2009**, K&W served a writ of execution on BP&K for a $47,000 judgment it had obtained against LHC in September 2008.[3] But, long before the execution was served, BP&K had performed services and advanced costs against the retainer far exceeding $50,000. BP&K refused to honor the execution.

BP&K applied for allowance of interim fees and costs of $100,000, claiming that through April 30, 2009, it had earned about $150,000 in this bankruptcy.[4] It seeks to currently pay itself the trust fund balance of $32,126.64 (part of which came from LHC), with any additional payment to be provided for in a confirmed chapter 11 plan.

---

[1] The interim fee application is at Docket No. 381 and K&W's limited opposition is at Docket No. 398. *See*, K&W's statement of the background at pages 2-4 of its opposition for the factual background.

[2] Docket No. 10.

[3] Case No. 3AN-08-8593-Civil, K&W Interiors, Inc. vs L.H. Construction, Inc., District Court for the State of Alaska, Third Judicial District at Anchorage.

[4] *See*, Exhibit 1 to BP&K's interim fee application, Docket No. 381-1.

MEMORANDUM REGARDING DETERMINATION
THAT BP&K'S INTEREST IN TRUST FUND
PRIMES THE INTEREST OF K&W INTERIORS

K&W objects to BP&K's use of any portion of the LHC retainer remaining in trust, and seeks a comfort order that taking the issue of BP&K's refusal to honor the execution up before the state court won't be a violation of the automatic stay.

**Jurisdiction**- The court has jurisdiction to rule on BP&K's interim fee application and the related issue of the priority to the trust funds pursuant to 28 USC § 1334(b) and this is a core proceeding in which I can enter a final order under 28 USC § 157(b)(1).[5] This matter arises in a civil proceeding either under title 11, or arises in or is related to a case under chapter 11. The bankruptcy court commonly rules on fee issues and has an independent duty to review fee applications,[6] even when fee retainers are paid by third parties.[7]

**Priority Between K&W and BP&K**- K&W argues that its execution should prime BP&K's rights in the trusts funds it still held in trust. K&W is seeking some lesser amount than the $32,126.64 that BP&K currently holds, which exceeds the original LHC deposit of $27,240.16 (the balance of the original $50,000 retainer came from another of debtor's closely held corporations).

The $27,240.16 is possibly subject to further reduction because of BP&K's advance of $17,125 to third parties for the benefit of debtor Lythgoe[8] – so, we may be talking about **$10,116.16** net and the fees generated by all parties in resolving this fee dispute may soon approach that.

---

[5] In re McDonald Bros. Const., Inc., 114 BR 989, 993 (Bankr ND Ill 1990).

[6] In re Martech, U.S.A., Inc., 6 ABR 29, 32, fn 8,9 (Bankr D Alaska Nov. 30,1999), Case No. A93-00889-DMD, *Order Partially Granting Application for Attorney Fees and Costs, and Requiring Disgorgement [William Artus].*

[7] AK LBR 2016-1(e).

[8] *See*, Docket No. 381-4, Exhibit B, page 7 of 82, showing disbursements of $17,125 to Hal Ward, Richter & Stone, Minkemann & Assoc., and First American Title.

MEMORANDUM REGARDING DETERMINATION
THAT BP&K'S INTEREST IN TRUST FUND
PRIMES THE INTEREST OF K&W INTERIORS

To be sure, K&W has not sought this court's ruling on the primacy issue (especially after I indicated at oral argument that I would rule against K&W on the issue).  Rather, K&W is seeking a comfort order that taking this issue back to state court to enforce its execution against BP&K would not be a violation of the automatic stay.[9]  The priority issue is, however, also squarely raised in the bankruptcy court by BP&K's interim fee application (which seeks payment only from the $32,126.64 in trust funds at this time)[10] and K&W's limited objection.

The keystone of K&W's argument is that the funds in trust were from a nondebtor third party, not the debtor, and therefore not property of the estate.[11]  A literal reading of the local bankruptcy rules perhaps negates this argument, or deflates it considerably.  AK LBR 2016-1, *Compensation of Trustees and Professional Fees* provide, at LBR 2016-1(e) [emphasis added]:

>   (e) *Pre-Petition Retainers*
>
>   (1) *In all cases in which court approval of the payment of professional fees is required, a prepetition retainer is considered property of the estate being administered*, and:
>
>   [A] must be segregated in a separate trust account; and
>
>   [B] may not be applied to fees or costs incurred after the filing of the petition without an order of the court.
>
>   (2) A professional holding a pre-petition retainer must, in conjunction with the fee application, give notice that the professional intends to apply the retainer to post-petition fees and disbursements.
>
>   [A] A retainer may not be applied without a court order approving an application for interim or final compensation. . . .

---

[9] *See*, *K&W Interior, Inc.'s Limited Objection to First Interim Fee Application*, Docket No. 398.

[10] *See*, BP&K's interim fee application, Docket No. 381, at pages 1, 17.

[11] 11 USC § 541(a) defines what is "property of the estate."

MEMORANDUM REGARDING DETERMINATION
THAT BP&K'S INTEREST IN TRUST FUND
PRIMES THE INTEREST OF K&W INTERIORS

Under this local bankruptcy rule, either: (a) the BP&K trust fund is deemed to be property of the estate because prior court approval was required to draw on it, and thus immune from K&W's execution due to the automatic stay, or (b) if bankruptcy court approval for drawing the retainer was not required, the funds were payable to BP&K before the K&W execution – the funds were outright transferable from the trust account to BP&K's office account at its discretion (i.e., they belonged to BP&K for the taking, either from their initial receipt in December 2007, or certainly after the work was performed, *if* no bankruptcy court approval is required – the fact that it had not yet transferred the funds from trust is of no consequence).   Under the local rule, K&W loses coming and going.

But, is court approval to draw on a nondebtor retainer required?  The DC Circuit has held that a professional receiving payment from a nondebtor third party *does not* have to apply to the bankruptcy court for approval of fees (although the court retained discretion to review the reasonableness of the fees).[12]   I am certainly not adopting this holding as the rule in this court, but leaving the issue for decision in a more appropriate case.  No decision is necessary because, under the facts, BP&K prevails whether or not an attorney must seek prior court approval before paying itself from a nondebtor retainer.  There are, of course, cases saying a fee application is necessary, even in the case of nondebtor retainers.[13]  And, even if no approval for payment of fees

---

[12] David & Hagner, P.C. v DHP, Inc., 171 BR 429, 435-37 (DDC 1994), *aff'd* 70 F3d 637 (DC Cir 1995); and, see, In re McDonald Bros. Const., Inc., 114 BR 989, 996 (Bankr ND Ill 1990) (attorneys could use a third party retainer without prior bankruptcy court review or approval of their fees; "the fee application procedure *only* applies when a professional is seeking an award from the estate." at 994).

[13] *E.g.,* In re Chapel Gate Apartments, Ltd., 64 BR 569, 573-75 (Bankr ND Texas 1986), and this is alluded to in Judge Holland's decision in Jackson v Federal Home Loan Mortgage Corp. (In re L&C Development), 3 ABR 138, 155-56 (DC Alaska 1993)

MEMORANDUM REGARDING DETERMINATION
THAT BP&K'S INTEREST IN TRUST FUND
PRIMES THE INTEREST OF K&W INTERIORS

is required, attorneys are still required by the Bankruptcy Code to disclose receipt of any payments received, even third party retainers.[14]

Even without this local rule, BP&K prevails over K&W. I assume the argument that K&W wants to make in state court (after getting a comfort order that it will not violate the automatic stay) is that, since the retainer was not property of the estate and the fees were not approved by the court before the date of execution, K&W could insert its entitlement to the funds ahead of BP&K's rights in the trust fund under Alaska law. If this argument flies in state court, it wants to recover the remaining portion of the LHC retainer held by BP&K in trust from the attorneys. The argument should not fly in state court, and does not fly in bankruptcy court.

In determining when a prepetition bankruptcy retainer is "property of the estate" under applicable state law, bankruptcy courts – like the court in the seminal In re McDonald Bros. Const. case from an Illinois bankruptcy court – have often based the proper outcome upon which of three types of legal retainers was involved:

(a) **classic retainers** (payment of a fee to secure the availability of an attorney's services in the future – title to the funds upon receipt);

(b) **security retainers** (payment of funds to attorneys, to be held as security for future services the attorneys are expected to render); and,

(c) **advance payment retainer** (funds paid to attorneys in advance for services expected to be performed in the future – differing from the security retainer in that ownership of the funds transfers on payment).[15]

---

[14] 11 USC § 329; In re McDonald Bros. Const., Inc., 114 BR at 995-96.

[15] In re McDonald Bros. Const., Inc., 114 BR at 997-1003. *And, see*, In re King, 392 BR 62, 70-71 (Bankr SDNY 2008); Jackson v Federal Home Loan Mortgage Corp. (In re L&C Development), 3 ABR 138, 149-57 (DC Alaska 1993) by Judge Holland.

MEMORANDUM REGARDING DETERMINATION
THAT BP&K'S INTEREST IN TRUST FUND
PRIMES THE INTEREST OF K&W INTERIORS

I have not found any Alaska Supreme Court cases discussing the various types of attorney retainer agreements in this context, although Alaskan District Court Judge Holland did discuss In re McDonald Bros. Const. in detail in his L&C Development decision in an appeal from this bankruptcy court. Judge Holland noted that the ruling in McDonald (holding that, because a classic or advanced retainer passes immediate ownership of funds to the attorneys, there was no requirement of a fee application before drawing down these retainer funds) has been criticized by some courts as end-running the tightly structured attorney compensation framework of the Bankruptcy Code.[16]

Thus, the best shot K&W has to prevail is to have the BP&K retainer declared a "security retainer."[17] Even if the LHC retainer is a security retainer (which its seems likely that it is), this does not mean that BP&K holds the retainer in peril of being preempted by LHC's creditors asserting subsequent claims. When the retainer was paid in December 2007, BP&K acquired a UCC 9 security interest – a possessory interest in money.[18] I believe that there is no bankruptcy case that supports a ruling that BP&K should lose the benefit of that security interest because K&W, 15 months later, executed on the BP&K trust account. BP&K's position is even stronger because the services for which the retainer was to secure payment had already been performed.

In In re L&C Development, the attorney's retainer came from funds *already* impressed with a prior security interest; the attorney took the funds subject to the prior interest, and had to

---

[16] Jackson v Federal Home Loan Mortgage Corp. (In re L&C Development), 3 ABR 138, 149-57 (DC Alaska 1993)

[17] Although, In re McDonald Bros. Const., Inc., 114 BR at 999-1000 seems to hold that in the case of a security retainer it *would* be property of the estate; I believe the court's discussion of "security retainers" somehow morphed into a discussion of a retainer made by a debtor, instead of a nondebtor. In any event, I cannot follow the court's reasoning on this precise issue.

[18] In re McDonald Bros. Const., Inc., 114 BR at 999, citing UCC 9-203(a), 9-207(2)(d), and 9-305 [comparable to AS 45.29.102(a)(93) [definition of "security agreement"]; AS 45.29.207(b)(3) [duties re fungible collateral]; AS 45.29.313(a) [security interest in money perfected by possession].

MEMORANDUM REGARDING DETERMINATION
THAT BP&K'S INTEREST IN TRUST FUND
PRIMES THE INTEREST OF K&W INTERIORS

Page 7 of 12

disgorge. To the contrary, LHC's interest attached by execution 15 months after BP&K took possession of the funds, so it is line *behind* BP&K with respect to realization on the collateral value of the funds.

K&W may believe that the court must determine which of the three types of agreement we are dealing with before a court can adjudicate it rights in the trust. I do not think so. Regardless what flavor of retainer you choose, and even under the one most restrictive to BP&K, BP&K earned the funds well before K&W's execution, and only needed court approval to draw them down (or, better for BP&K's position, did not even need that if it is ultimately determined that no fee application need be made for a nondebtor retainer which is not property of the estate) – that is, it sought its own version of a "comfort order" that a draw was appropriate.

Because it was bound by bankruptcy statutes and rules,[19] BP&K felt (perhaps rightly) that it could not draw on the funds prior to court approval. Before researching that issue in this case in depth, even I had assumed, and it is the common practice in this court, that prior bankruptcy court approval is required before an attorney could pay himself or herself from a nondebtor retainer, although there appears to be no decision in the Alaska bankruptcy court that address the issue head on. A definitive ruling on whether prior approval is required is not necessary, however, to resolve the dispute between K&W and BP&K.

By March 25, 2009, BP&K was holding the trust funds for payment of the fees for work already performed. It had a possessory security interest in the funds from December 2007, to pay for or secure subsequent performance, and its entitlement to the funds for its own benefit had accrued by providing much more than $50,000 (let alone $27,240.16) in legal services before the K&W execution. *Maybe*, if BP&K had not performed enough work to absorb the retainer, a

---

[19] 11 USC §§ 328-331; FRBP 2016(a) (which applies to award of fees "from the estate") and FRBP 2017; and, AK LBR 2016-1(c).

MEMORANDUM REGARDING DETERMINATION
THAT BP&K'S INTEREST IN TRUST FUND
PRIMES THE INTEREST OF K&W INTERIORS

Page 8 of 12

1   reversionary or secondary lien interest would have been available to K&W in the trust fund, but
2   there is no surplus in this case.

3       I am not saying by negative implication that, if sufficient work had not been performed to
4   use up the trust fund on the date of the execution, K&W would necessarily prevail *vis-a-vis* the
5   unearned balance. That is not the case before the court, but if it were, BP&K might still have a
6   valid argument that its security interest in the trust funds primed K&W's execution, provided that
7   the work was ultimately performed.

8       **Court's Refusal to Hold Evidentiary Hearing**- K&W said at the argument that the court
9   did not have a sufficient record to make its ruling. I find that the agreed, uncontested facts,
10  BP&K's retention application and order of approval, and BP&K's disclosures of compensation,
11  provide sufficient information for the court to rule without the need for an evidentiary hearing or
12  further evidentiary input.[20]

13      This is a dispute between K&W on the one hand, and BP&K and the debtor on the other,
14  regarding a fee application and entitlement to funds held as a retainer. It is a contested matter
15  governed by FRBP 9014. Rule 9014(d) provides: "Testimony of witnesses with respect to
16  disputed material factual issues shall be taken in the same manner as testimony in an adversary
17  proceeding." FRBP 9017 says that FRCP 43 applies in cases under the Bankruptcy Code. Rule
18  43(b) says that, when a motion relies on evidence outside the record, the court may hear the
19  matter on affidavits, oral testimony or depositions.

20      In this dispute between K&W and BP&K, all the essential facts are undisputed or relate to
21  documents regarding BP&K's retention that are in the court's record, so an evidentiary hearing is

---

[20] The principle briefs of K&W and BP&K regarding the retainer issue at Docket Nos. 398 and 415; the fee application at Docket No. 381; BP&K's application for retention, the order of retention, and BP&K's disclosures of compensation at Docket Nos. 4, 10, 64 and 317.

MEMORANDUM REGARDING DETERMINATION
THAT BP&K'S INTEREST IN TRUST FUND
PRIMES THE INTEREST OF K&W INTERIORS

Page 9 of 12

not necessary.  "Motions, in actual practice, usually are decided on papers rather than after oral testimony of witnesses."[21]

**Request for a Comfort Order**- K&W says it only wants a comfort order that it will not violate the automatic stay if it takes this matter back to state court to get an adjudication that BP&K was errant when it did not turn over the balance of the LHC trust funds in response to K&W's execution.  I am not inclined to give a comfort order.  Nonetheless, I cited the parties to a case which I thought might be applicable by analogy, the Chugach Forest Products case,[22] which states (under quite different facts) that it would not be a violation of the automatic stay to proceed against a third party, absent an affirmative injunction.

But, going back to state court at this point may no longer be an option for K&W.  My ruling on the merits may collaterally estop K&W from getting a state court ruling that it has a prior right to the trust funds.[23]  At this point, K&W is probably required to file an appeal of my ruling, rather than seeking a contrary, more favorable, ruling in state court.  And, I imagine the state court judge would thank me, in any event, for not having to possibly get embroiled in deciphering BP&K's hundred page fee application.

**CONCLUSION**- (a)  If a literal reading of AK LBR 2016-1(e) means that the LHC retainer is "property of the estate," K&W is not entitled to litigate this issue in state court without lifting the stay (which has not been sought, and would not be granted).  Alternatively, if LBR 2016-1(e) means, in this case, that BP&K did not have to file a fee application, the next paragraph applies.

---

[21]  9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 2416.  Note, although memorandum opinions of the BAP are not supposed to be cited as authority, for attribution purposes, the argument about the need for an evidentiary hearing was taken from the memorandum decision in In re Jac Even Resources, BAP No. CC-09-1007-DHMo (9th Cir BAP 06/23/2009).

[22]  In re Chugach Forest Products, Inc.. 23 F3d 241, 246-47 (9th Cir 1994).

[23]  Wilson v Municipality of Anchorage, 977 P2d 713, 726 (Alaska 1999).

MEMORANDUM REGARDING DETERMINATION
THAT BP&K'S INTEREST IN TRUST FUND
PRIMES THE INTEREST OF K&W INTERIORS

Page 10 of 12

  (b) If: (1) the LHC retainer was not property of the estate;

      (2) the funds had already been earned by BP&K on the date of the execution by providing legal services to the debtor; and,

      (3) the correct law is that *there was no need for BP&K to seek court approval* before drawing the trust fund down, then BP&K owned the funds outright on the date of the execution and simply had not transferred them from its trust account to its office account.  BP&K prevails under this scenario.

  (c) If: (1) the LHC retainer was not property of the estate;

      (2) the funds had already been earned by BP&K on the date of the execution by providing legal services to the debtor; and,

      (3) the correct law is that BP&K *had to seek bankruptcy court approval* before drawing the trust fund down, then BP&K's rights to the funds accrued no later than performing the services (and, more likely before, upon receipt of the retainer) and what had been a mere possessory interest turned into an entitlement to realize on the collateral, subject to bankruptcy court approval of a fee application.  Its prior security interest is not denigrated just because it had not yet filed the fee application at the time of K&W's execution. BP&K prevails under this scenario.  (Parenthetically, I think the facts and law in this matter are perhaps best resolved under this paragraph.)

MEMORANDUM REGARDING DETERMINATION
THAT BP&K'S INTEREST IN TRUST FUND
PRIMES THE INTEREST OF K&W INTERIORS

DATED: July 6, 2009

/s/ Herb Ross
HERB ROSS
U.S. Bankruptcy Judge

<u>Serve</u>:
John Siemers, Esq., for debtor
Michelle Boutin, Esq., for K&W Interiors.
John Beard, Esq., for First National Bank Alaska
Kay Hill, US Trustee

07/06/09                                                                                      D7168

MEMORANDUM REGARDING DETERMINATION
THAT BP&K'S INTEREST IN TRUST FUND
PRIMES THE INTEREST OF K&W INTERIORS